UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
MICHAEL ARAGAO and                        )
CHANTEL ARAGAO,                           )
                                          )
          Plaintiffs,                     )
                                          )
          v.                              )     CIVIL ACTION
                                          )     NO. 13-12515-WGY
MORTGAGE ELECTRONIC REGISTRATION          )
SYSTEMS, INC., U.S. BANK, N.A.,           )
and FEDERAL HOME LOAN MORTGAGE            )
CORPORATION,                              )
                                          )
          Defendants.                     )
_____ )


MEMORANDUM AND ORDER

YOUNG, D.J.                                          May 29, 2014


I.   **INTRODUCTION**

     This case is a post-foreclosure challenge to the

foreclosure of a property owned by Michael and Chantel Aragao

(the "Aragaos").  The Aragaos assert a series of claims against

Mortgage Electronic Registration Systems, Inc. ("MERS"),

Merrimack Mortgage Company, Inc. ("Merrimack"),[1] U.S. Bank, N.A.

("U.S. Bank"), and Federal Home Loan Mortgage Corporation

("Freddie Mac") (collectively, with MERS and U.S. Bank, the

_____

     [1] Merrimack has since been dismissed without prejudice.
Stipulation Dismissal Def. Merrimack Mortg. Co., Inc. Without
Prejudice, ECF No. 13.

"Defendants"): (1) that the Defendants lacked the legal authority to foreclose on the property, (2) that U.S. Bank breached a mortgage loan modification contract, (3) that the Defendants owed and violated a duty of good faith and fair dealing, and (4) that the Defendants failed to comply with certain regulatory and statutory requirements.

For the reasons set forth in this opinion, this complaint must be DISMISSED.

**A.    Procedural History**

On or about July 31, 2013, the Aragaos filed suit against the Defendants in the Massachusetts Superior Court sitting in and for the County of Bristol.  Defs.' Notice Removal Civ. Action ("Notice Removal") 1, ECF No. 1.  The Defendants received service in early September 2013 and removed this case to the United States District Court for the District of Massachusetts on October 7, 2013.  Id. at 1, 3.

The Defendants filed a motion to dismiss for failure to state a claim on October 31, 2013.  Defs. U.S. Bank, N.A.'s, Fed. Home Loan Mortg. Corp.'s & Mortg. Elec. Registration Sys., Inc.'s Mot. Dismiss, With Prejudice, Pls.' Compl., ECF No. 9; see also Mem. Law Supp. Defs. U.S. Bank, N.A.'s, Fed. Home Loan Mortg. Corp.'s & Mortg. Elec. Registration Sys., Inc.'s Mot. Dismiss, With Prejudice, Pls.' Compl. ("Defs.' Mem."), ECF No. 10.  The Aragaos filed an opposition on November 14, 2013.

Pls.' Mem. Law Supp. Opp'n Defs., U.S. Bank, N.A., Fed. Home
Loan Mortg. Corp. & Mortg. Elec. Registration Sys., Inc.'s Mot.
Dismiss, With Prejudice, Pls.' Compl. ("Pls.' Opp'n"), ECF No.
14.  The Defendants replied on November 20, 2013.  Defs.' Reply
Pls.' Opp'n Defs. U.S. Bank, N.A.'s, Fed. Home Loan Mortg.
Corp.'s & Mortg. Elec. Registration Sys., Inc.'s Mot. Dismiss,
With Prejudice, Pls.' Compl. ("Defs.' Reply"), ECF No. 15.

   **B.   Facts Alleged**

   On February 21, 2007, the Aragaos executed a mortgage
agreement, accompanied by an associated note, for a property
located in Fall River, Massachusetts (the "Property").  See
Notice Removal, Ex. A., Compl. ¶ 9, ECF No. 1-1; Aff. Jennifer
Mikels Supp. Defs. U.S. Bank, N.A.'s, Fed. Home Loan Mortg.
Corp.'s & Mortg. Elec. Registration Sys., Inc.'s Mot. Dismiss,
With Prejudice, Pls.' Compl. ("Mikels Aff."), Ex. A, Note, ECF
No. 11-1; Mikels Aff., Ex. B, Mortgage ("Mortg."), ECF No. 11-2.
The mortgage identified the Aragaos as the borrowers, Merrimack
as the lender, and MERS as the mortgagee, "acting solely as a
nominee for Lender and Lender's successors and assigns."  Mortg.
1.

   At some point between 2007 and 2011, the Aragaos fell
behind in their payments, and in June 2011, they "engaged [U.S.]
Bank for a mortgage loan modification to avoid foreclosure on
their property."  Compl. ¶ 24.  One month later, on July 7,

                                 3

2011, U.S. Bank, which by this point had assumed responsibility for debt collection, issued a formal written notice to the Aragaos stating that they were in breach of the mortgage agreement and had 150 days to cure their default. Mikels Aff., Ex. C, U.S. Bank Letter ("150-Day Letter") 1, ECF No. 11-3. The Aragaos and U.S. Bank continued mortgage modification discussions for the next ten months, but "[o]n or about May 7, 2012, [U.S.] Bank informed Plaintiffs that their request for a mortgage modification to avoid foreclosure was denied." Compl. ¶ 27. U.S. Bank's stated reason for denial allegedly was that the Aragaos had failed to submit requested documents. Id. The Aragaos, however, allege that had supplied all required documentation during a previous loss mitigation review. Id. ¶ 28.

Concurrent with the loan modification process, the note and mortgage changed hands. At some point -- the record is unclear as to the date -- Merrimack assigned the note to U.S. Bank. See Note 4. On May 22, 2012, U.S. Bank directed MERS to assign the mortgage to U.S. Bank.[2] See Mikels Aff., Ex. D, Assignment, ECF

---

[2] The Aragaos' complaint avers that "[MERS] allegedly assigned the note to [U.S.] Bank." Compl. ¶ 13. This is a legal impossibility. MERS is nothing more than a nominee trust and cannot assign anything except at the express direction of the note holder. See Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352, 370 (D. Mass. 2011), aff'd, 708 F.3d 282 (1st Cir. 2013); see also id. at 373-75 (discussing how employees of the note holder are "deputized" as MERS's agents for the

No. 11-4; see also Compl. ¶ 13.  Then, on December 4, 2012, U.S.

Bank entered the Property for the purposes of "foreclosing the

Aragaos's mortgage.  Mikels Aff., Ex. E, Certificate Entry, ECF

No. 11-5.  Finally, on June 20, 2013, the mortgage was conveyed

to Freddie Mac.  Mikels Aff., Ex. F, Foreclosure Deed, ECF No.

11-6; Compl. ¶ 32.

## II.  ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure ("Rule") 12(b)(6) requires

a court to dismiss a complaint if it "fail[s] to state a claim

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6);

see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

In making this determination, the First Circuit sets out a

three-step inquiry.  "First, 'the court must separate the

complaint's factual allegations (which must be accepted as true)

from its conclusory legal allegations (which need not be

credited).'"  Grajales v. P.R. Ports Auth., 682 F.3d 40, 45 (1st

Cir. 2012) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220,

224 (1st Cir. 2012)).  Second, the court must "accept the truth

of all well-pleaded facts and draw all reasonable inferences

purposes of transferring the mortgage); Laura A. Steven, Note,
MERS and the Mortgage Crisis: Obfuscating Loan Ownership and the
Need for Clarity, 7 Brook. J. Corp. Fin. & Com. L. 251, 255
(2012) (discussing MERS's nominee status).  As the Mikels
Affidavit implies, an agent of U.S. Bank simply assigned the
mortgage to itself.  Cf. Mikels Aff., Ex. D., Assignment, ECF
No. 11-4.

therefrom in the pleader's favor." Id. at 44. By itself, this
step is not enough to survive a motion to dismiss, as "the
complaint must contain sufficient factual matter to state a
claim to relief that is plausible on its face." Id. at 44
(quoting Katz v. Pershing, LLC, 672 F.3d 64, 72-73 (1st Cir.
2012)). Thus, the court finally must determine whether the
facts pled permit a "reasonable inference," defined as one that
is "plausible, not . . . merely conceivable," that the defendant
is liable. Id. (quoting Sepúlveda-Villarini v. Dep't of Educ.
of P.R., 628 F.3d 25, 29 (1st Cir. 2010)); see also Sec. & Exch.
Comm. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)
("If the factual allegations in the complaint are too meager,
vague, or conclusory to remove the possibility of relief from
the realm of mere conjecture, the complaint is open to
dismissal.").

In evaluating a motion to dismiss, "[o]rdinarily . . . any
consideration of documents not attached to the complaint, or not
expressly incorporated therein, is forbidden." Watterson v.
Page, 987 F.2d 1, 3 (1st Cir. 1993). There are exceptions,
however, "for documents the authenticity of which are not
disputed by the parties; for official public records; for
documents central to plaintiffs' claim; or for documents
sufficiently referred to in the complaint," even if those
documents are introduced by the defendant. Id. at 3-4.

**B.    Count One: Declaratory Judgment That the Defendants Lack Legal Authority to Foreclose**

The Aragaos' first claim is that the Defendants lack the legal authority required to foreclose, and thus that the foreclosure should be declared void.  While the Aragaos' complaint is not a model of clarity, it appears to allege that because Merrimack purportedly was the only party with authority to assign the Aragaos' mortgage and note, Compl. ¶ 37, MERS and U.S. Bank lacked the requisite standing and legal authority to foreclose on the Property, id. ¶¶ 38-39.  The Aragaos contend that therefore, no party -- including Freddie Mac -- has any legal interest in the property. Id. ¶¶ 40-41.  The complaint, however, fails to meet the requisite pleading standard required for factual specificity, and thus is dismissed for failure to comply with the requirements set out by Twombly, 550 U.S. 544, as interpreted by the First Circuit.

Significantly, the complaint is nearly devoid of factual pleadings relevant to this count.  Of the twenty-six paragraphs listed in the fact section, only seven include factual claims, with another five including mixed statements of law and fact. The remaining fourteen paragraphs are statements of law which cannot be considered at this stage.[3]  Of the factual or mixed

---

[3]  For more information on how these paragraphs were categorized, see Appendix 1.

claims that can be considered, only two mixed statements of law and fact are relevant to this count. The first, paragraph 11, states that only the Lender, Merrimack, had the power to accelerate the terms of the Aragaos' note and invoke the statutory power of sale. Compl. ¶ 11. The second, paragraph 13, states that the mortgage, but not the note, was assigned by U.S. Bank to itself on May 22, 2012.[4] See id. ¶ 13.

Even assuming that these mixed statements may be considered at the motion to dismiss stage, neither provides the Aragaos support. The first allegation, in paragraph 11, implies that another party, such as U.S. Bank, cannot invoke foreclosure proceedings. These claims, however, are not supported by the underlying mortgage document. To be sure, the mortgage states that the "Lender. . . may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." Mortg. ¶ 22. But the mortgage also says that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Id. ¶ 20. Reading these provisions so that "every word is given effect," DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 804

---

[4] Because the Aragaos do not argue this point, the Court assumes that, at the time it assigned the mortgage to itself, U.S. Bank already held the related note by assignment from Merrimack. If it did not, of course, it had no authority to assign the mortgage to itself. See Culhane, 826 F. Supp. 2d at 372-73 (stating that a mortgage can only be assigned at the direction of the note holder).

(2013) (citing Hagerty v. Myers, 333 Mass. 387, 388 (1955)), as this Court must, leads to a conclusion that the current owner of the mortgage and note is the only party that can foreclose, but that both the mortgage deed and underlying note are transferable. Such a reading comports with how Massachusetts courts have analyzed issues relating to the transferability of mortgages. See, e.g., U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 649-50 (2011) (acknowledging that mortgages and notes can be transferred). Thus, the Aragaos' claim that only Merrimack could invoke the statutory power of sale, rather than the current owner, fails as matter of law.

The Aragaos' second relevant factual allegation is found in paragraph 13, stating that "[MERS] allegedly assigned the mortgage to [U.S.] Bank." Compl. ¶ 13. They further add the conclusion of law that "[t]his alleged assignment failed to assign the required 'note' as prescribed under Massachusetts law." Id. As the Defendants properly state, however, a mortgage can be split from its underlying note, so long as the two are held by the same foreclosing party at the time of foreclosure. Defs.' Mem. 6-7; see Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 571 (2012) (holding that a mortgagee eligible to exercise the statutory power of sale is a "person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder"). The key

inquiry, then, is whether U.S. Bank held both the note and the mortgage at the time of foreclosure, and the Aragaos do not allege otherwise. That the bank did not hold both before the foreclosure date is of no legal consequence.

Stated simply, then, the Aragaos have not viably alleged that the Defendants have violated any law warranting any form of declaratory judgment by this Court. Thus, given the limited pleading, this Court GRANTS the motion to dismiss as to Count One.

### C. Count Two: Breach of Contract

The Aragaos' second claim is that U.S. Bank entered into, and then breached, a mortgage loan modification agreement with them.[5] See Compl. ¶¶ 47-49. The question for the Court is whether such an agreement was created.[6]

---

[5] The Aragaos also alleged that Merrimack breached its duty under the terms of the mortgage agreement. Compl. ¶¶ 43-46. Because Merrimack has been dismissed from this action, however, such allegations are moot for the purposes of this motion.

[6] Although there is no allegation of a written agreement, because the alleged contract concerns a modification to the mortgage payment terms, rather than to the underlying interest in the land, the Massachusetts statute of frauds does not bar this Court from considering the existence and potential breach of a non-written contract. See Akar v. Fed. Nat'l Mortg. Ass'n, 845 F. Supp. 2d 381, 397 (D. Mass. 2012) (Gorton, J.) ("[A]n oral modification which does not rewrite the contract, but merely alters the timing or mode of performance of the contract, is enforceable under Massachusetts law"); id. ("[W]here '[t]he oral agreement merely changed the method by which the plaintiffs had undertaken to pay their mortgage indebtedness[,]' but did not affect the mortgagee's 'right, title and interest' in the

Under Massachusetts law, the essential elements of a contract are "offer, acceptance, and an exchange of consideration or meeting of minds." Northrup v. Brigham, 63 Mass. App. Ct. 362, 367 (2005). In order to satisfy the pleading standards demanded by a motion to dismiss, a claim of breach of contract must plead all of these requisite contract elements. See Persson v. Scotia Prince Cruises, Ltd., 330 F.3d 28, 34 (1st Cir. 2003) ("A breach of contract complaint must allege (1) the existence of a valid and binding contract; (2) that plaintiff has complied with the contract and performed his own obligations under it; and (3) breach of the contract causing damages.") (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1235, at 268-70 (2d ed. 2002)); see also Emrit v. Universal Music Grp., Inc., No. 13-181-ML, 2013 WL 3730423, at *2 (D.R.I. July 12, 2013) (dismissing complaint because it was "absent any allegation concerning the existence of a contract"); MMB Dev. Grp., Ltd. v. Westernbank P.R., 762 F. Supp. 2d 356, 368 (D.P.R. 2010) (concluding that allegations of offer and acceptance, coupled with consideration, are sufficient to deny motion to dismiss); Pearce v. Duchesneau Grp., Inc., 392 F. Supp. 2d 63, 68 (D. Mass. 2005) (Gertner, J.) (holding that allegations that defendant offered and agreed to

mortgage, the agreement was not unenforceable under the Statute of Frauds.") (second and third alteration in original) (quoting Siegel v. Knott, 316 Mass. 526, 528-29 (1944)).

provide financial services to plaintiff, for a fee, are sufficient to allege the existence of a contract).

The Aragaos' complaint does not cross this threshold. The complaint offers four factual allegations relevant to the potential formation and then alleged breach of a renegotiation contract between the mortgagors and U.S. Bank.[7] The first allegation states that the Aragaos "engaged [U.S.] Bank for a mortgage loan modification," Compl. ¶ 24, and the second states that the Aragaos "faithfully complied with the demands of [U.S.] Bank pursuant to their loss mitigation foreclosure alternative request," id. ¶ 25. The complaint then avers that "[U.S.] Bank informed Plaintiffs that their request for a mortgage modification to avoid foreclosure was denied," id. ¶ 27, even though the Aragaos "provided [U.S.] Bank with all the documents that it requested," id. ¶ 28. Taken together, and drawing all inferences in favor of the non-moving plaintiff, these allegations support a conclusion that the Aragaos made an offer to modify the mortgage to avoid foreclosure, but not a conclusion that U.S. Bank accepted that offer, much less for consideration. Indeed, the Aragaos explicitly state that "their request for a mortgage modification . . . was denied." Id. ¶

---

[7] The Complaint also alleges that "[U.S.] Bank entered into a mortgage loan modification agreement with Plaintiffs." Compl. ¶ 47. Insomuch as this states that a contract has been created, however, it is a conclusion of law, and cannot be credited at the motion to dismiss stage.

27. Thus, because the Aragaos have not pled the required elements of a contract, their claim for a breach of that contract cannot lie.[8]  This Court thus DISMISSES Count Two.

### D.  Count Three: Breach of Duty of Good Faith and Fair Dealing

The Aragaos' third claim is that the Defendants owed them a an duty of good faith and fair dealing, and failed to act in accordance with this obligation.  Compl. ¶¶ 51-53.  Under Massachusetts law, "[e]very contract implies good faith and fair dealing between the parties to it."  T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569-70 (2010) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991)).  Such an obligation means that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract."  Id. at 570 (quoting Anthony's Pier Four, 411 Mass. at 471-72).  With respect to mortgages, this requires, inter alia, that the "mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor."  Seppala & Aho Const. Co. v.

---

[8] While not at issue in this case, commentators have suggested that there may be a right to enforce contract mortgage modification agreements entered into under the federal Home Affordable Modification Program.  See generally Arsen Sarapinian, Note, Fighting Foreclosure: Using Contract Law to Enforce the Home Affordable Modification Program (HAMP), 64 Hastings L.J. 905 (2013).

_Petersen_, 373 Mass. 316, 320 (1977) (quoting _West Roxbury Co-op._
_Bank_ v. _Bowser_, 324 Mass. 489, 492 (1949)).

Courts have cabined this obligation, however, and it "may
not be 'invoked to create rights and duties not otherwise
provided for in the existing contractual relationship.'" _Ayash_
v. _Dana-Farber Cancer Inst._, 443 Mass. 367, 385 (2005) (quoting
_Uno Restaurants, Inc._ v. _Boston Kenmore Realty Corp._, 441 Mass.
376, 385 (2004)).  In the mortgage context, absent specific
contractual language creating such rights, this means that
courts will not use the duty of good faith to imply modification
or negotiation obligations on the part of the mortgagee,
especially after default.[9]  See _Adamson_ v. _Mortgage Elec._
_Registration Sys., Inc._, 29 Mass. L. Rptr. 33, at *4 (Mass.
Super. Ct. 2011) (Brassard, J.); _see also_ _FAMM Steel, Inc._ v.
_Sovereign Bank_, 571 F.3d 93, 100-01 (1st Cir. 2009) (holding
that a creditor did not violate the obligation of good faith by
refusing to modify a defaulted loan, relying on the absence of

---

[9] The First Circuit has recently reaffirmed this analysis.
In _MacKenzie_ v. _Flagstar Bank, FSB_, 738 F.3d 486 (1st Cir.
2013), it endorsed the observation that "[u]nder Massachusetts
case law, absent an explicit provision in the mortgage contract,
there is no duty to negotiate for a loan modification once a
mortgagor defaults."  _Id._ at 493 (quoting _Peterson_ v. _GMAC_
_Mortg., LLC_, No. 11-11115, 2011 WL 5075613, at *6 (D. Mass. Oct.
25, 2011) (Zobel, J.).  The First Circuit concluded from this
that "[i]t would therefore be an error to extend the implied
covenant to encompass a duty to modify . . . the loan prior to
foreclosure, where no such obligation exists in the mortgage."
_Id._

obligations in the loan agreements and noting that "[w]hen the borrower is in default, that necessarily alters the contours of the covenant of good faith and fair dealing"); Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 62 (1st Cir. 2001) ("[I]n the absence of an agreement to do particular acts, Massachusetts law imposed no obligation on the [lender] to take the affirmative steps that would have benefited the borrower.") (internal quotation marks omitted); Federal Deposit Ins. Corp. v. LeBlanc, 85 F.3d 815, 822 (1st Cir. 1996) ("The FDIC had no duty at all under the loan agreement to extend appellant an easement, let alone to provide him one on terms which were more favorable to him. Nothing prevents a party to a bargain from engaging in hard-nosed dealings. . . ."); Souza v. Bank of Am., Nat'l Ass'n, No. 1:13-cv-10181-PBS, 2013 WL 3457185, at *5 (D. Mass. July 8, 2013) (Saris, C.J.) (concluding that the failure to offer a loan modification was not a violation of the duty of good faith).

In the instant case, the Aragaos do not point to any specific contractual provisions in either the mortgage deed or the note requiring the mortgagee or lender to undertake any loan modification programs at any time before foreclosure. Nor does an independent examination of these documents reveal such a provision. See generally Note; Mortg. Thus, given that the duty of good faith and fair dealing only applies to existing contractual obligations, and especially considering the fact

15

that the mortgage was in default before any modification discussions were undertaken, see FAMM Steel, Inc., 571 F.3d at 100-01, and because no such contractual obligations required pre-foreclosure negotiation, this Court DISMISSES Count Three.

**E.    Count Four: 209 Mass. Code Regs. 56.00**

In their fourth count, the Aragaos allege that their mortgage is subject to regulatory requirements under [209 Massachusetts Code Regulations 56.00 ("Regulation 56.00")], and that U.S. Bank failed to comply with these regulations. Compl. ¶¶ 58-59.  In response, the Defendants argue that the relevant regulation was not issued until March 2, 2012, eight months after the 150-Day Letter was sent, and that they cannot be charged with violating a regulation not yet in existence. Defs.' Mem. 11.

The Defendants are correct that Regulation 56.00 went into effect on March 2, 2012, having been proposed six months earlier on September 2, 2011.[10]  Moreover, while legislation and regulation passed within the Commonwealth can under certain circumstances have retroactive effect, the presumption against retroactivity requires a "clear indication of legislative intent" before such a construction can be adopted.  Smith v. Mass. Bay Transp. Auth., 462 Mass. 370, 377-78 (2012).  Here,

---

[10] See "Regulation Tracking" section of WestlawNext, with a search term of "209 CMR 56," and the "Issue Date" function of LexisNexis's "Massachusetts Register" database.

there is no indication that the provisions were intended to be retroactive. Thus, because the 150-Day Letter was sent before Section 56 was issued (or even proposed), the Defendants cannot be held liable for noncompliance with a regulation that did not exist, and Count Four is DISMISSED.

### F. Count Five: Massachusetts General Laws Chapter 244, Section 35A

Finally, the Aragaos allege that "[U.S.] Bank violated [Massachusetts General Laws chapter 244, section 35A ("Section 35A")] by denying Plaintiffs a good-faith opportunity to avoid foreclosure of their home," and by "failing to comply with the prescribed mandates" of the statute. Compl. ¶ 63. This charge fails.

Section 35A provides several rights to a mortgagor in the context of a threatened foreclosure. First, "[t]he mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage . . . until at least 150 days after the date a written notice is given by the mortgagee to the mortgagor." Mass. Gen. Laws ch. 244, § 35A(g). During this time, the mortgagor has a "150-day right to cure a default." Id. § 35A(b). If the mortgagee wishes to foreclose before the expiration of the 150-day period, it may do so if, among other requirements, it certifies that "it has engaged in a good faith

effort to negotiate a commercially reasonable alternative to foreclosure," as defined by the statute. Id. § 35A(b)(i). Critically, however, if the creditor does not wish to foreclose within 150 days of issuing the notice of default, it is under no obligation to engage in any negotiations with the mortgagor. See Barash v. CitiMortgage, Inc., 84 Mass. App. Ct. 1107, at *2 (2013) ("[B]ecause [mortgagee] did not seek to shorten the 150-day period, the statute did not obligate it to engage in a good faith effort to negotiate a commercially reasonable alternative to foreclosure.") (internal quotation marks omitted); Dragone v. PNC Bank, Nat'l Ass'n, No. 11-12194-RWZ, 2013 WL 2460565, at *3 (D. Mass. June 7, 2013) (Zobel, J.) ("[Section 35A] does not broadly require that all mortgagees must try to negotiate a commercially reasonable alternative to foreclosure. Instead, it only imposes that requirement on mortgagees who seek to foreclose within 150 days after issuing a notice of default.").

Here, U.S. Bank sent a right to cure notice to the Aragaos on July 7, 2011, and the Property was foreclosed upon on December 4, 2012. 150-Day Letter; Certificate of Entry. This nearly seventeen-month gap far exceeds the 150-day statutory requirement. U.S. Bank was under no obligation to negotiate, and the Aragaos' allegations that the bank did not negotiate in good faith must fail.

The only possible argument the Aragaos could fall back on --
-- which they raise obliquely in their opposition to the motion
to dismiss, though not in their complaint, see Pls.' Opp'n 8-11
-- is that the 150-Day Letter failed to comply with ten
statutory requirements set out in Section 35A(h). See Mass.
Gen. Laws ch. 244, § 35A(h)(1)-(10). Assuming this argument was
properly raised, it fails nevertheless. As shown in more depth
in Appendix 2 to this opinion, the text of U.S. Bank's 150-Day
Letter fully complies with the enumerated requirements of
Section 35A(h). Thus, because the properly formatted right-to-
cure letter was sent in July 2011, and because the Property was
not foreclosed upon until December 2012, U.S. Bank had no
obligation to negotiate with the Aragaos and was in compliance
with Section 35A. As a result, Count Five is DISMISSED.[11]

**III. CONCLUSION**

For the aforementioned reasons, this Court GRANTS the
Defendants' motion to dismiss, ECF No. 9, and dismisses the
complaint in its entirety.

---

[11] Even if U.S. Bank had not complied with Section 35A's
notice requirements, the foreclosure would still be valid.
After briefing in this case was submitted, the Supreme Judicial
Court held in United States Bank National Association v.
Schumacher, 467 Mass. 421 (2014), that because Section 35A's
right to cure provisions do not "relate to the foreclosure of
mortgages by the exercise of a power of sale," id. at 431
(quoting Mass. Gen. Laws ch. 183, § 21), any failure on the part
of the mortgagee to comply strictly with that law's mandates
does not "render[] a foreclosure void," id. at 422.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

## IV. APPENDICES

### A. Appendix 1: Complaint Factual and Legal Allegations

| Complaint Paragraph | Type |
|---|---|
| 9. On or about February 21, 2007, Plaintiffs entered into an alleged mortgage agreement, which identified Mers as the mortgagee and solely as nominee for Lender. | Fact |
| 10. The alleged mortgage agreement named Merrimack as the Lender. | Fact |
| 11. The alleged mortgage only gave Lender the legal power to accelerate the terms thereunder. The Lender had an affirmative duty to give Plaintiffs notice regarding any default and action required to cure any default. Under the alleged mortgage, Lender was the only party with legal authority to invoke the Statutory Power of Sale. | Mixed |
| 12. <u>Lender in this matter never provided Plaintiffs with the required notices under the terms of the alleged mortgage.</u> Merrimack failed to comply with the terms and conditions under the alleged mortgage. | Mixed (facts underlined) |
| 13. <u>On or about May 22, 2012, an alleged assignment of mortgage concerning Plaintiffs' property was executed by Mers. In this alleged assignment of mortgage, Mers allegedly assigned the mortgage to US Bank.</u> This alleged assignment failed to assign the required "note" as prescribed under Massachusetts law. | Mixed (facts underlined) |
| 14. Mers did not convey a valid, legal interest in Plaintiffs' property, as prescribed under Massachusetts law. | Law |
| 15. US Bank failed to hold, at all times relevant in this matter, any valid, legal interest in Plaintiffs' property. US Bank never had legal authority and standing in Plaintiffs' property. | Law |
| 16. The alleged assignment of mortgage in this matter is void, as a matter of law. | Law |
| 17. This alleged assignment of mortgage lacks the required legal authority and standing in Plaintiffs' property. This alleged assignment | Law |

| | |
|---|---|
| of mortgage fails to give US Bank valid legal authority and standing in Plaintiffs' property to foreclose and/or evict thereon. | |
| 18. Mers failed to validly assign the legal interest in Plaintiffs' property to foreclose and/or evict Plaintiffs. | Law |
| 19. Defendants lack the required legal capacity and standing to have any legal effect concerning Plaintiffs' property. | Law |
| 20. Defendants lack the legal authority and standing in Plaintiffs' property to lawfully make assignments concerning Plaintiffs' property. | Law |
| 21. Defendants lack the required legal authority and standing in Plaintiffs' property to foreclose and/or evict Plaintiffs from their home. | Law |
| 22. US Bank lacks legal authority and standing in Plaintiffs' property to issue a valid Order of Notice to foreclose on Plaintiffs' property. | Law |
| 23. The alleged assignment of mortgage in this matter is void.  The alleged assignment of mortgage in this matter has no legal effect concerning Plaintiffs' property. | Law |
| 24.  In or about June 2011, while under the alleged mortgage, Plaintiffs engaged US Bank for a mortgage loan modification to avoid foreclosure on their property. | Fact |
| 25. During this time period, Plaintiffs faithfully complied with the demands of US Bank pursuant to their loss mitigation foreclosure alternative request. | Fact |
| 26. Plaintiffs, at all times relevant in this matter, acted in good-faith and fair-dealings with US Bank. | Mixed |
| 27. On or about May 7, 2012, US Bank informed Plaintiffs that their request for a mortgage modification to avoid foreclosure was denied. US Bank's stated reason for declining Plaintiffs' modification request was allegedly that Plaintiffs' failed to submit requested documents to US Bank. | Fact |
| 28. Plaintiffs did not fail to submit requested documents to US Bank.  Plaintiffs provided US Bank with all the documents that it requested, during the loss mitigation foreclosure review. | Fact |

| | |
|---|---|
| 29. US Bank <u>intentionally and unreasonably</u> repeatedly requested Plaintiffs to submit the same documents during the loss mitigation foreclosure review of their mortgage loan modification request. | Mixed (law underlined) |
| 30. US Bank acted in bad-faith and fair-dealings when it unfairly, unreasonably and without good cause denied Plaintiffs for a mortgage loan modification to avoid foreclosure on Plaintiffs' property. | Law |
| 31. Plaintiffs have been and continue to be damaged by Defendants' conduct and actions in this matter. | Law |
| 32. On or about June 20, 2013, US Bank allegedly assigned a foreclosure deed to FHLMC. | Fact |
| 33. This foreclosure deed is void. US Bank lacked the legal authority and standing in Plaintiffs' property to validly assign the required legal interest in Plaintiffs' property to foreclose. | Law |
| 34. FHLMC lacks the legal authority and standing in Plaintiffs' property to foreclose or evict Plaintiffs from their home. | Law |

## B.    Appendix 2: 150-Day Letter Statutory Requirements

| Statutory Requirement[12] | U.S. Bank Letter Text |
|---|---|
| (1) the nature of the default claimed on such mortgage of residential real property and of the mortgagor's right to cure the default by paying the sum of money required to cure the default; | "You are in breach of the mortgage due to the failure to pay the monthly installments due thereunder.  You have the right to cure the default and redeem the property through payment of the full amount that is past due prior to a foreclosure sale."  (p. 1) |
| (2) the date by which the mortgagor shall cure the default to avoid acceleration, a foreclosure or other action to seize the home, which date shall not be less than 150 days after service of the notice and the name, address and local or toll free telephone number of a person to whom the payment or tender shall be made unless a creditor chooses to begin foreclosure proceedings after a right to cure period lasting less than 150 days that engaged in a good faith effort to negotiate and agree upon a commercially reasonable alternative but was not successful in resolving the dispute, in which case a foreclosure or other action to seize the home may take place on an earlier date to be specified; | "You have (150) days from the date of this letter [July 7, 2011] to cure the default." (p. 1)<br><br>. . .<br><br>"Remit payments to:<br>U.S. Bank Home Mortgage<br>P.O. Box 2005<br>Owensboro, KY 42304<br>Toll Free Phone: 1-800-365-7900." (p. 2) |
| (3) that, if the mortgagor does not cure the default by the date specified, the mortgagee, or anyone holding thereunder, may take steps to terminate the mortgagor's ownership in the property by a foreclosure | "If you fail to bring this account current within 150 days, the full balance of the loan will be accelerated and the current holder of the mortgage may take steps to terminate your rights to the |

---

[12] Mass. Gen. Laws ch. 244, § 35A(h)

| | |
|---|---|
| proceeding or other action to seize the home; | property by foreclosure or other action to seize the property. You may be evicted from the home after a foreclosure sale." (p. 1) |
| (4) the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact if the mortgagor disagrees with the mortgagee's assertion that a default has occurred or the correctness of the mortgagee's calculation of the amount required to cure the default; | "The current name and address of the mortgage holder is US Bank NA, 4801 Frederica St. Owensboro KY 42301. If you disagree with the assertion that you are in default or disagree with the amount past due, you may contact Mary Midkiff toll free at 1-800-365-7900." (p. 1) |
| (5) the name of any current and former mortgage broker or mortgage loan originator for such mortgage or note securing the residential property; | "Current or former mortgage broker or loan originator, if applicable: Merrimack Mortgage Co." (p. 1) |
| (6) that the mortgagor may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency, and the local or toll free telephone numbers the mortgagor may call to request this assistance; | "You may be eligible for assistance from the Massachusetts Housing Finance Agency. The Division of Banks has set up a hope hotline at 888-995-4673 for assistance." (p. 2)<br><br>[NB: This is the number of the Homeownership Preservation Foundation] |
| (7) that the mortgagor may sell the property prior to the foreclosure sale and use the proceeds to pay off the mortgage; | "You have the right to sell the property prior to the foreclosure sale and use the proceeds to payoff the mortgage." (p. 2) |
| (8) that the mortgagor may redeem the property by paying the total amount due, prior to the foreclosure sale; | "You have the right to cure the default and redeem the property through payment of the full amount that is past due prior to a foreclosure sale." (p. 1) |
| (9) that the mortgagor may be evicted from the home after a foreclosure sale; and | "You may be evicted from the home after a foreclosure sale." (p. 1) |

| (10) the mortgagor may have the following additional rights, depending on the terms of the residential mortgage: (i) to refinance the obligation by obtaining a loan which would fully repay the residential mortgage debtor; and (ii) to voluntarily grant a deed to the residential mortgage lender in lieu of foreclosure. | "You may also have the right to refinance the obligation by obtaining a loan which would fully repay the residential mortgage debt and/or the right to voluntarily grant a deed to the residential mortgage lender in lieu of foreclosure, depending on the terms of the residential mortgage." (p. 2) |
|---|---|
| (10 cont'd) The notice shall also include a declaration, in the language the creditor has regularly used in its communication with the borrower, appearing on the first page of the notice stating: "This is an important notice concerning your right to live in your home. Have it translated at once." | "**This is an important notice concerning your right to live in your home.  Please have it translated at once.**" (p. 1) |